would the clerk call the next case please mr. Wolofsky good morning good morning your honor my name is Ben Wolofsky I represent the appellant Richard Gabrys on behalf of the office of the state appellate may it please the court there were two key problems with how mr. Gabrys motion to withdraw his guilty plea was dismissed the first is that counsel's rule 604 D certificate was untimely as it was filed after the motion itself was actually dismissed and second the same attorney who Gabrys pro se letter was criticizing represented him on the motion withdraws plea and that created a per se conflict of interest so for these two reasons were active this court reversed the dismissal of this motion withdraw the plea and remand new proceedings and the 604 D requires strict compliance and in people versus Shirley the Illinois Supreme Court says strict compliance occurs where the certificate is filed prior to or contemporaneously with the hearing on the motion to draw the plea in this case counsel filed for certificate four days after the motion was dismissed so it was untimely underserved and so we are asking that this court reverse and remain for strict compliance including a timely certificate of compliance with 604 D now the state is relying on cases including Travis and grace to argue that there needs to be no remand here but Travis itself was vacated by the Illinois Supreme Court and remanded in light of Shirley for fresh proceedings on the motion to withdraw the plea so Travis doesn't support the state position now there's grace from the fourth district because grace simply applied Travis without bothering to can't rely on a case the Illinois Supreme Court has subsequently vacated so those two cases don't help the state's position finally say argues that this is harmless error that elevates form over substance and there's a waste of judicial resources to remand this for new proceedings first there's no valid authority for the proposition that this can be certainly in people versus James the Supreme Court set out the standard for strict compliance and said there is no harmless error for 604 D issues second there wasn't anything harmless about this situation where again we're arguing in the next issue the council was acting under a per se conflict of interest so here she didn't bother to amend her written motion to include that hasn't the Supreme Court only said about three situations are per se conflicts like when you had a case we identified three areas of per se how's this end up with per se well I think the per se conflict because you're putting the attorney in a situation where she's either got to say yes I was ineffective or no I wasn't effective and my client is simply wrong and so that creates a situation where either she's advancing her clients claims as she's supposed to do under 604 D or she's defending her own performance and I think what we have here is a situation where she really ended up defending her own performance on this case when she came into court on on the motion to withdraw she said the first claim from Mr. Gavris was that she his attorney refused to meet with her prior to the day on which he pled guilty she says no I never promised to meet with him he's totally mistaken about this and I certainly would have met with her with him if he had asked so we do have an issue where she's saying his claim is there was a situation involving possible defense regarding the $300 in damage element of the criminal damage to property offense and she she says here's his claim but she doesn't do anything to actually advance it she just says this is it she's not taking a position one way or another she's not certainly not saying yes I was ineffective for not looking into this and the third thing she mentioned at one of the status states that there was a possible third party involved in this case either as a perpetrator maybe a co-defendant and there was an allegation that she didn't do anything to investigate that person how many years later did all this happen where these allegations were made. The letter itself came right after he pled guilty in April of 2011 so his his initial pro se allegation was immediate within just a couple of days I think it was mailed from when he started. Honestly I don't remember the date of the offense I can check and I'll bring it up on a rebuttal. But I know part of the situation why this case dragged on for a couple of years is that it was there was a motion to suppress that took a while to litigate. So I'll double check on the date and I'll have it for you in a few minutes. But again we have a situation where whether or not there was a per se conflict we certainly have a situation where counsel was actually conflicted because under Rule 604D she's not advancing the defendant's claims of an evicted assistant. She's instead defending her own performance on the case. So that's a situation where at the very least counsel should have either withdrawn or the court should have appointed a new attorney or some combination. The state argues How does your argument fit with our Allen case, People v. Allen? Our position is that Allen was incorrectly decided and I'm sure that's not what your honor wants to hear. But I think Allen overlooked. Now that's from our district. Yes. Not the cases from the other districts. Yeah there was Dean was a second district case that was a little more recent. In People v. Allen and in Dean too there's no mention made of the fact that Rule 604D explicitly provides a right to counsel. In the Crankville or Baltimore situation you don't have a right, a defendant doesn't have a right to automatically have counsel on claims of an evicted assistant of counsel. But under Rule 604D motions to withdraw a guilty plea. The rule itself sets out a standard by which counsel is to be appointed. And as this court acknowledged in People v. Chestnut, the appointment of counsel under Rule 604D should also assure representation of the defendant by counsel free from conflicting interests. And here I think we've identified a couple of situations where counsel isn't free from conflicting interests. There are claims made in the motion to withdraw that specifically go toward her performance on this case. And so under Rule 604D we have a conflict and we have a situation where a new counsel should be appointed. Now the state next argues that well, not only is this a Crankville situation, but the preliminary inquiry under Crankville was satisfied here. We don't think that's the case. There was no sufficient preliminary inquiry for a couple of reasons. First, the defendant's claims go toward her investigation of the case and her communication with her client. This is not a situation involving tactical or strategic matters. So the defendant's pro se motion and the other things that come up over the course of this hearing are going toward colorable claims of possible neglect of the case. And that's the standard for appointing a counsel even under Crankville. And then second, the other thing, the court didn't bother to make any sort of inquiry with the defendant. It was a one-sided inquiry. The court asked counsel about her position on, for example, whether she failed to meet with him prior to his guilty plea. She said no, and that was the end of it. There wasn't any communication with the defendant to try and flesh out these situations to see if there was an actual situation that warrants appointing a counsel under Crankville. Can I back up a second? You're arguing that this is de novo standard of review, but really this is an abuse of discretion, isn't it? No, I think it is de novo because we're talking about the application of Rule 604D, and we're interpreting that in terms of whether… Under this facts situation? Well, there are facts involved here, but it's really in terms of, and this is the rule we're advocating, if a defendant in a motion to withdraw a guilty plea is alleging ineffective assistance of the attorney who helped guide that guilty plea, that under 604D should require new counsel. We're not advocating for a rule like Crankville where we have an initial inquiry. It's just a matter of law. There should be an appointment of new counsel. You're saying it should be automatic? It should be automatic, yes. It's not under Crankville, but again, Crankville is a common law remedy where most comes up under… Is there any case that really says it has to be automatic? Well, yeah. I mean, Chestnut is one. The other one is that we cite in our reply brief, People v. Friend from the 2nd District. Well, Friend's a little different situation, isn't it? It was the same guilty plea situation where a defendant was criticizing his guilty plea attorney, and the court, the 2nd District held that counsel should have moved to withdraw. So it's not even a matter of the court should appoint someone. It's the counsel has a duty on his or herself to withdraw where her performance is being criticized. I think that same result is reached in People v. Willis and People v. Adams, and those cases are ones we cite specifically in our reply brief. But we do have a situation where under 604D, if an attorney's performance is being criticized, that same attorney shouldn't be reappointed then to handle the motion to withdraw. As we can see from this case, the problem is that, again, she's either advancing the defendant's position or she's defending her own position, and that in and of itself is a conflict of interest. So for those two reasons, we would ask that this court reverse the dismissal of Mr. Gabbard's motion to withdraw and to remand it for new proceedings and the appointment of a new counsel. Thank you. Are there any questions? Thank you, Mr. Woloski. Thank you. Mr. Hanson, good morning. Good morning, Your Honors. We have police court counsel. Judge, with regard to the dates, if this is responsive to your question, he was charged by indictment on January 4, 2008, and the guilty plea that brought everything into action here was April 11, 2011. This is taken from the defendant's statement of facts. I had it in front of me, and I had the luxury, unlike my opponent. It was pending for a long time. Yes. You know, you want to address the standard review. I think in this case, it's clearly abuse of discretion because this was a case calling for the Moore-Crankle hearing. The judge had it, found as he did, and that's truly the issue here. What I would like to emphasize also, Your Honors, is defense counsel seemed to be alluding to this in his argument. But in his brief, he did not allege anywhere that the result of the Moore-Crankle hearing was wrong, that that was not an issue that he raised. The only point was this per se conflict of interest argument. Your Honors, I'll try to keep my points pretty brief because I truly think this has been covered adequately in my brief. But it could be overlooked here that even the Moore-Crankle inquiry regarding ineffective assistance of counsel that the judge made probably wasn't required here. The defendant's note, and it's set out at page 5 of the defendant's brief in Togo, had no real allegations of ineffectiveness. He said counsel said she would meet with him prior to the April 11, 2011 court date on a given occasion. He made nothing of that, though. He said he had no problem with his attorney until the April 11, 2011 court date. He said that he then felt he was behind the eight ball and was rushed. He then said he had ample time, I'm quoting from his note now, it's at page 5, in ample time to prepare simply adding he had a defense. Nothing about the counsel didn't propound his defense. There were no real allegations of ineffectiveness. There was nothing here but what I called in my brief, and I'm redundantly stating now, was buyer's remorse. As the judge found, it was just the normal stress from anxiety at the guilty plea. Regarding counsel not meeting with him this one day, and I'm going into these matters to show what a truly fair look at all his questions is, there's a defendant head below. Regarding the judge not meeting with him this day, the counsel not meeting with him, I'm sorry, she said she met with him many times. This day, also, the offer, she said she didn't know what specific day he was talking about, but this day the offer to plead guilty was tendered to him at 9.30 in the morning, 9 to 9.30. He didn't plead guilty until the afternoon. Obviously, he had time to meet with his counsel that day and was not unduly rushed. He was under the pressure that a criminal defendant is under. Did she have time to meet with him? The only inference from the record is the offer was tendered in the morning except in the afternoon. There was no indication whatsoever they didn't meet and discuss the offer. He's a client represented by an attorney. Say he decided to accept the offer without the attorney's input. That was the complaint, wasn't it? It was that she didn't have time to meet with him. No, not that day. It was sometime before that date. The complaint was that she didn't have time to meet with him prior to that date. If you'll look at, again, it's a, I think I've saved the right page. Yeah. Promise she would meet with me prior to the court date. That's on defendant's brief page five. Let me ask you, I mean, I know the law doesn't require this. Okay, and forget the other, defendant pleads guilty on day one. Day two comes back and says, you know what, change of mind, I don't want to plead guilty. I want to withdraw. What's the harm? Why isn't the answer, okay, let's go on, here's a trial date, let's go. You know, we'll set a trial date and do it. I mean, what's the problem with, in a practical sense, of allowing a guy to withdraw his guilty plea the next day and moving forward? I don't know that there is any problem in the practical sense. The point is the law certainly doesn't require it. I know it's beyond your control. And it happens all the time. You know, that's when, you know, frequently people move to withdraw their guilty pleas quickly because, oh, my God, I just pled guilty, and I've opened myself up for, you know, a number of years in the state penitentiary. Yeah. You know, frequently it's going to be then because once they, you know, up until then they haven't pled guilty. They're a presumed innocent person. Now they're not only presumed guilty, they are guilty. They're found guilty. And the enormity of that probably weighs on them. But that doesn't mean we ought to obviate the guilty plea that happened in your scenario a day before when he was given the adequate admonitions. And, of course, there's no question here complaining about that. So your rule of lenity, if you could call it that, I guess could be done but hardly has to be done. It never has been done, really. And it's a matter of judicial administration that perhaps judges should talk about it at a judicial conference. Or maybe a Supreme Court rule could come saying if any guy has remorse about his plea within the first 24 hours or whatever, you ought to give a very lenient look at reviewing it or overturning it. But that isn't the law. With regard to the 604D situation and the Supreme Court's Shirley case, and I know you're... You mean it being too late? Yeah, and... Judge, I've got the faxes they're giving me. You've got the faxes. I mean, you've got a problem with Shirley, don't you? I mean, I know you cite Travis and Grace, which are sort of anomalies. Sort of anomalies? Yeah. I have the record I'm given. Yeah. You know, I... Travis was overturned by the Supreme Court. Well, their supervisory order sending it back saying look at it in light of Shirley. So I shouldn't quibble with you. But, I mean, Shirley's from our Supreme Court. It is. And you've got this. I know you're stuck with the facts that you've... I'm stuck, and I'm hanging my hat in part on Justice Harrison's concurrence in Shirley where he's pointed out, and I quote, strict compliance is not so strict. And my argument to you is, Your Honors, there is zero indication here that counsel did anything other than fully comply with Rule 604D except for timely filing a certificate saying she did it. There's not the sliced allegation she didn't do it. And how many people are joined with Justice Harrison in this special concurrence? I don't think any. I'm not certain. I'm sure you know the answer to that. That's what you're asking me. But I think he was by himself. Well, so is his special concurrence the law? His concurrence? Oh, no, but it's a sensible observation. In essence, what he is saying is although Shirley has said strict compliance, they've really, under the facts of Shirley, which are distinguished by my opponent in his brief, strict compliance isn't 100% strict. But nobody agreed with him. Hype will join with him in his special concurrence. I'm a little better off than I thought I was, Your Honor. Isn't there a point to having the 604D filed at the time of the hearing? I mean, isn't that doing something for the trial court that they need? It's giving the trial court that information there in black and white and one piece of paper, probably, maybe two, that counsel has met the 604D applications. Counsel signs off on it. Sure, sure, right. I'm not saying it's a meaningless thing. So it can't be harmless, as you argue, and the Supreme Court rejected. The Supreme Court doesn't seem to be very favorable to my argument, Your Honor, and I don't think this panel is too likely to be either. But it's the argument I have available to me to make. Under these circumstances? Under the young. You know, I love the opportunity of authorship. You get in there at record saying, now let's just change this a little bit, you know, get my red pencil out there. Can't do that. That would be disbarrable. That would be wrong. That would be wrong. We could do it, but it would be wrong. You know, I point out in my brief at pages four to six how the Moore-Crankel hearing properly found there was no conflict by this attorney as no ineffective assistance. I'm returning now to the first argument. I think I've said all I can say as to the tardiness of the certificate. Moore-Crankel hearings clearly apply to both post-trial and post-plea claims of ineffective assistance, my opponent's assertion to the contrary notwithstanding. In both cases, defendants frequently file pro se motions of ineffectiveness leading to the Crankel-Moore hearings. Rule 604D regarding post-guilty plea motions does not affect this matter. Indeed, Allen says that toward the end of the opinion. Not exactly on these facts, but Allen points that out. 604D speaks of a judge determining whether a defendant is represented by counsel or not and wants counsel. The defendant has a right to an attorney both then and for trial. However, that doesn't mean the defendant has a right to a different attorney than the one he had when, as here, he makes a patently meritless claim of ineffectiveness in the judge after the hearing so fine. Three more points I'd like to make largely addressing the defendant's reply brief.  This, possibly being under 300, was brought to light by his attorney, argued in a motion to withdraw the plea, and prevailed. The state's attorney came in and argued against it, defeated her motion. This had nothing to do with ineffective assistance of counsel, by the way, and wasn't purported to. The earlier claim of the defense of someone else doing it was looked into by the attorney and found to be without merit at the June 29 and July 6, 2011, Moore-Crankel hearings. That's in the record and it's in counsel's brief. And here, basically shutting down the argument of this Rule 604D really protecting pro se people, here it was the defendant's attorney who filed his motion to withdraw his guilty plea. He wasn't doing that pro se, so I'm just raising those points because they certainly favor me and show that the defendant was accorded every consideration, every right, every representation by counsel who, on these facts, did not approach being in a conflicted position. Thank you, Your Honor. Thank you. Any other questions? No? Mr. Woloski? Thank you, Your Honor. I just have three real quick points to address. Oh, other than the date. Yeah, counsel's right. It was a 2007 case. The guilty plea was April 11, 2011, and then Mr. Gabbard's pro se letter was dated April 14, so we're talking three days later. So this was pretty quick after the guilty plea. And again, the 2007 to 2011, that was based on the motion to suppress, which took some time to litigate. So my first point here, counsel states that there were no real allegations of ineffective assistance of counsel that were brought up, either in the pro se letter or in counsel's eventual written motion. Again, there's an allegation here that she failed to meet with him at some time prior to the April 11 date on which he pled guilty. That's in the letter, which it may or may not suffice in the end to create a situation where he would be able to withdraw his guilty plea. But it's an allegation that counsel did something wrong. That's an allegation of deficient performance. Second, he alleged that he had a defense, which we don't know what it is from the letter, but if we read later on in the record, it's about this $300 in damages issue. That wasn't necessarily articulated in his pro se letter itself, but if he had an attorney appointed, that attorney would have a duty to help flesh out these allegations, to put them in the proper form of alleging ineffective assistance of the guilty plea attorney. So the fact that his pro se letter was perhaps a bit inartful demonstrates that we have a situation where he does need an attorney to come in and help him. Counsel calls these allegations of ineffective assistance of counsel patently meritless. But again, to reach that point, you have to take guilty plea counsel's word on them and look at her performance on the motion to withdraw his plea. So that's a problem. Her performance has been criticized by the defendant. So we can't necessarily rely on the fact that this was her position, that these were meritless claims, or that she sort of tried to litigate the issue about the defense. Again, she didn't really take a position. She just said, here's what his claim is about this $300 in damages issue. So we do have a conflict, and we can't rely on what happened below, simply because he didn't have an attorney who was actively advocating for his position. The second issue I'd like to address is, counsel doesn't really explain or address why Rule 604D situations are different than every other Frankel situation. Again, we have Allen, on the one hand, saying that it's the same and that's fine. But again, 604D, by its terms, sets out a right for counsel that a defendant has a right to counsel to advocate on behalf of the claims in the motion to withdraw. It's different in the Frankel context because a defendant doesn't, other than Frankel, have a right to make pro se allegations of ineffective assistance. Frankel is a common law remedy whereby a defendant can voice those claims. He doesn't have a right to have counsel advocate on his behalf on those claims, at least of the initial Frankel inquiry. In the 604D context, he has the right to an attorney who will advocate on his behalf. So when we have a situation like here, where counsel is either defending her own performance or advocating the defendant's position, that's a conflict that must be resolved by the appointment of new counsel. Third, I just want to briefly address Shirley. In Shirley, the defendant had already had a summary remand before it reached the decision in Shirley. So he'd already had what the Supreme Court called a full and fair second opportunity to litigate his motion to withdraw. We are seeking a first remand in this case under Shirley. We're not seeking a second. And again, I don't think we can call what happened below a full and fair opportunity to litigate the motion to withdraw, especially because counsel was operating under this conflict of interest. Thank you. Thank you, Mr. Woloski. We'd like to thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in a brief recess for a panel change.